Albert O. AUSTIN, Appellant,

v.

COUNTRYWIDE HOMES LOANS, Rex L. Kesser, Thomas E. Redder, and Keith Morris, Appellees.

No. 01–06–00547–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Feb. 7, 2008.

Rehearing Overruled March 25, 2008.

---

Albert O. Austin, Rex, GA, pro se.

James L. Sowder, Jacquelyn Chandler, Thompson, Coe, Cousins & Irons, L.L.P., Dallas, TX, Richard L. Spencer, Johnson DeLuca Kennedy & Kurisky, Houston, TX, TX, for appellees.

Panel consists of Justices NUCHIA, HANKS, and HIGLEY.

## OPINION

GEORGE C. HANKS, JR. Justice.

Appellant, Albert O. Austin, challenges the trial court's order granting summary judgment in favor of appellee, Countrywide Home Loans, on claims arising from Austin's failure to pay a promissory note. In nine issues, Austin complains that the

trial court erred in granting the motion because there are fact issues regarding Countrywide's ownership of the note, the amounts Austin has paid on the note, and Countrywide's administration of the note. We affirm.

## Factual and Procedural Background

This action arises from the execution of a promissory note for the purchase of real property. In May 2001, Austin executed a promissory note ("the Note") for the purchase of property located at 8114 Sandy Glen Lane, Harris County, Texas ("the Property"). The Note, in the amount of $65,913.00, had a 30–year term and was payable to Harbor Financial Mortgage Corp. The Note was secured by a deed of trust on the Property. After its execution, the Note was reassigned several times and was ultimately assigned to Countrywide.[1]

Austin made payments on the Note until June of 2003, when he stopped making payments altogether. At the time that he stopped making payments, the remaining principal balance on the Note was in excess of $57,000.00. Nevertheless, approximately two weeks later, Austin began filing instruments in the real property records purporting, among other things, to amend or revoke the deed of trust. In response, Countrywide accelerated the principal balance and interest accruing on the Note.

Austin filed suit against Countrywide for, among other things, breach of contract, common law fraud, breach of fiduciary duty, and for violations of various state and federal statutes. Through these claims, Austin seeks to (1) cancel the Note and prevent Countrywide from foreclosing on the Property and (2) recover alleged damages resulting from Countrywide's administration and collection efforts under the Note. His fundamental complaint appears to be that Countrywide is not a valid assignee of the Note and that, consequently, all of its actions in the administration and collection of the note are unlawful.[2]

Countrywide counterclaimed, seeking foreclosure, recovery of all amounts due and owing on the Note, and a declaration that the instruments that Austin filed in the real property records of Harris County constitute impermissible clouds on the title to the Property. Countrywide filed a traditional and no-evidence motion for summary judgment seeking the dismissal of Austin's claims and the affirmative relief requested in its counterclaim.

The trial court granted the motion and entered judgment in favor of Countrywide. In addition to dismissing Austin's claims and awarding Countrywide damages, the trial court granted Countrywide the right to foreclose on the Property. On the same day that the court signed the summary judgment order, Austin filed a motion for leave to amend his pleadings to add additional claims against Countrywide. No order was signed relating to the motion for leave. On appeal, Austin challenges the trial court's order granting summary judgment.

## Standard of Review

To prevail on a summary judgment motion, a movant has the burden of proving

1. Harbor Financial assigned the Note to Fleet National Bank. Fleet National Bank subsequently assigned the Note to Fleet Mortgage Corp., which then assigned the Notice to Washington Mutual Savings and Loan ("Washington Mutual"). Washington Mutual assigned the Note to Countrywide. The Deed of Trust followed the Note.

2. Austin also initially filed suit against "Trustees" Rex. L. Kessler, Thomas E. Redder, and Keith Morris. Kessler, Redder, and Morris eventually moved for and received summary judgment. Austin does not challenge that ruling on appeal.

that it is entitled to judgment as a matter of law and that there is no genuine issue of material fact. Tex.R. Civ. P. 166a(c); *Cathey v. Booth*, 900 S.W.2d 339, 341 (Tex. 1995). We may affirm a summary judgment only when the record shows that a movant has disproved at least one element of each of the plaintiff's claims or has established all of the elements of an affirmative defense as to each claim. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex.1997). When, as in this case, a summary judgment does not specify the grounds on which the trial court granted it, we will affirm the judgment if any theory included in the motion is meritorious. *Harwell v. State Farm Mut. Auto. Ins. Co.*, 896 S.W.2d 170, 173 (Tex.1995); *Summers v. Fort Crockett Hotel, Ltd.*, 902 S.W.2d 20, 25 (Tex.App.-Houston [1st Dist.] 1995, writ denied). However, a summary judgment must stand or fall on the grounds expressly presented in the motion. *McConnell v. Southside Indep. Sch. Dist.*, 858 S.W.2d 337, 339–41 (Tex.1993).

To prevail on a no-evidence summary judgment motion, a movant must allege that there is no evidence of an essential element of the adverse party's cause of action. Tex.R. Civ. P. 166a(i); *Fort Worth Osteopathic Hosp., Inc. v. Reese*, 148 S.W.3d 94, 99 (Tex.2004). We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *Boaz v. Boaz*, 221 S.W.3d 126, 130 (Tex.App.-Houston [1st Dist.] 2006, no pet.). Although the non-movant need not marshal its proof, it must present evidence that raises a genuine issue of material fact on each of the challenged elements. Tex.R. Civ. P. 166a(i); *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex.2004). A no-evidence summary judgment motion may not properly be granted if the non-movant brings forth more than a scintilla of evidence to raise a genuine issue of material fact on

the challenged elements. *Ridgway*, 135 S.W.3d at 600. More than a scintilla of evidence exists when the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997).

### Countrywide's Recovery on the Note

■ Austin's ultimate argument with respect to issues one and three through seven is that the trial court erred in granting summary judgment in favor of Countywide on its claim for recovery on the Note. We disagree.

■ To recover for a debt due and owing under a promissory note, a party must establish that it is the legal holder of an existing note, the debtor's execution of the note, and that an outstanding balance is due and owing. *Commercial Serv. of Perry, Inc. v. Wooldridge*, 968 S.W.2d 560, 564 (Tex.App.-Fort Worth 1998, no pet.). In this case, Countrywide presented evidence in support of each element of its claim for breach of the Note.

The affidavit testimony of Kimberly Dawson, vice president of Countrywide, and Dianne DeLoney, manager of Countrywide's case management group, establishes that Countrywide is the holder of the Note and that it was executed by Austin. Dawson testified that Countrywide is the sole holder of the loan evidenced by the Note dated May 8, 1991, in the original principal amount of $65,913.000, executed by Austin, payable to the order of Harbor Financial Mortgage Corporation, duly endorsed to Countrywide, (the holder in due course), and secured by a deed of trust or "Mortgage recorded on May 8, 1991 as Instrument No. Clerk's File No N137477 in the official records of Harris County," (the "Mortgage"). She testified that, attached to Countrywide's

motion for summary judgment, is a true and correct copy of the Note and the Mortgage.

Dawson also testified that the original assignment was duly executed and delivered by Countrywide's predecessor-in-interest to Countrywide, but has been lost or misplaced, and Countrywide has been unable to locate the assignment despite diligent efforts to do so by employees of Countrywide. Dawson testified that a new assignment was executed by Washington Mutual Bank as successor to Fleet Mortgage Corp., through its attorney in fact, Countrywide Home Loans, Inc. She further testified that Countrywide has not assigned, pledged, sold, endorsed, or in any way transferred or hypothecated the Note, the Mortgage, or any interest therein, and Countrywide retains full right, power, and authority to collect the amounts owed to the holder of the Note and to foreclose on the Property as well as to sell, transfer, and convey its interest in the Note and the Mortgage. She testified that Countrywide has never consented to a release or modification of the Note or the Mortgage.

■ The affidavit testimony of Dianne DeLoney establishes the outstanding balance due and owing on the Note. In her affidavit, DeLoney testifies that Austin was required to pay $554.24 per month for principal and interest plus additional amounts for escrow of taxes and insurance. The last payment made by Austin was on December 23, 2004. The principal balance as of the date the summary judgment was filed was $57,751.47. As of February 28, 2006, the total amount due for the unpaid principal balance plus interest and fees due from Austin is $96,567.27. At the time of the filing of Countrywide's motion for summary judgment, Austin had a negative escrow balance of $13,423.42, with additional interest continuing to accrue after

February 28, 2006 at the rate of $17.16 per day. DeLoney testified that, attached to Countrywide's motion for summary judgment, were true and correct copies of Austin's payment history regarding the Note.

■ Finally, Countrywide provided summary judgment evidence establishing that the doctrine of *res judicata* also bars Austin from raising the issue of ownership of the Note in this lawsuit. When a prior judgment is offered in a subsequent suit in which there is identity of parties, issues, and subject matter, under the doctrine of *res judicata*, such judgment is treated as an absolute bar to retrial of claims pertaining to the same cause of action. *Bonniwell v. Beech Aircraft Corp.*, 663 S.W.2d 816, 818 (Tex.1984). Attached to Countrywide's motion for summary judgment is a copy of an order dated September 3, 2004, issued by the United States Bankruptcy Court for the Northern District of Georgia in Austin's prior bankruptcy proceeding. In this order, the bankruptcy court ruled that, despite his arguments to the contrary, Austin executed the Note and that Countrywide is the current holder of the Note. In its order, the bankruptcy court also notes that "Mr. Austin has admitted in his schedules that he is indebted to Countrywide . . . ." As such, the doctrine of *res judicata* bars Austin from re-litigating this issue and establishes Countrywide's status as the holder and assignee of the Note and establishes that Austin executed on the Note.

■ In response to Countywide's motion, Austin presented an affidavit, a document entitled "Disputed Facts," documents purporting to be copies of checks made out to Countywide, and assorted copies of his correspondence with Countywide. However, these documents do not raise a fact issue regarding the ownership of the Note or Countrywide's right to recover under the Note. The affidavit does not contradict

any of the facts contained in the evidence attached to Countrywide's motion for summary judgment nor does it verify any of the "disputed facts" set forth in the attachment to Austin's response. Furthermore, with respect to the copies of the checks, Austin does not testify that these were true and correct copies of the originals, that he tendered them to Countrywide, that he tendered them timely, that they were not returned for insufficient funds, or that he cured any default with respect to those that are clearly marked, "RE-TURNED NOT PAID NSF."[3] Likewise, Austin's affidavit neither authenticates the correspondence nor sets forth facts constituting evidence of any unlawful conduct. Finally, Austin did not specify in his response the amount of credits or offsets to which he is allegedly entitled or provide the Court with any evidence to support a balance different from the one provided by Countrywide. *See Slavin v. Citizens State Bank of Frost*, 567 S.W.2d 928, 930 (Tex. Civ.App.-Dallas 1978, no writ) (affirmative defense of payment was not established where affiant did not provide testimony to support proper amount of offset or credit).

 ██ Austin argues on appeal that Dawson's and DeLoney's affidavits are "fabricated" and cannot support the summary judgment in Countrywide's favor. Austin waived these objections by failing to object in the trial court and obtain a ruling from the trial judge. *See* TEX.R.APP. P. 33.1(a).

 ██ Next, relying on article 6627, Austin argues that Washington Mutual's assignment of the Note to Countrywide is void. While the statute cited by Austin no longer exists, the Property Code provision that supplanted it, Section 13.001, provides that a conveyance of real property is void as to a subsequent purchaser for value without notice of the conveyance, unless the instrument of conveyance is acknowledged and filed of record. TEX. PROP.CODE ANN. § 13.001 (Vernon 2002). The purpose of this statute is to protect innocent purchasers without notice of a prior transfer from being injured or prejudiced by their ignorance of a competing claim. *See id.*; *Prowse v. Walters*, 941 S.W.2d 223, 228 (Tex.App.-Corpus Christi 1996, pet. denied). Because Austin is not seeking to set aside a conveyance made before his acquisition of the property, this provision is inapplicable.

 ██ Austin also argues that the assignment violates the statute of frauds. Austin, however, is not a party to the assignment between Washington Mutual and Countrywide. As a stranger to the assignment, he cannot invoke the protection of the statute of frauds. *Clements v. Withers*, 437 S.W.2d 818, 821 (Tex.1969) (the statute of frauds does not give third parties the right to interfere with others' contracts). As such, Austin's reliance on the statute of frauds is also misplaced and does not preclude summary judgment in favor of Countrywide.[4]

As part of the first issue presented on appeal, Austin also argues that the trial court erred in its duty to sign an order on

---

**3.** We note that many of the copies of checks are undated or bear illegible dates. Other checks do not appear to have been forwarded to Countrywide and processed by Austin's financial institution, as they are marked returned insufficient funds.

**4.** On appeal, Austin argues for the first time that, under Section "19.001(a)" of the Texas Civil Practice and Remedies Code, the "credit transaction" was rescindable. Contrary to Austin's argument, Section 19.001 provides no basis for rescinding the Note. *See* TEX. CIV. PRAC. & REM.CODE § 19.009 (Vernon 1997). Rather, it provides one method, which is not exclusive, for supplying a lost deed, bond, bill of sale, mortgage, deed of trust, power of attorney, or conveyance. *Id.*

his motion to compel after allegedly granting the motion. Austin contends that the trial court stated on the record that it would grant the motion to compel and sign his order overruling Countrywide's objections. However, the record reflects that the trial court never made any such representation.

To the extent that Austin's point of error can be read as asserting that the trial court erred in denying his motion to compel, we also disagree. The standard for review of a discovery order is abuse of discretion. *TransAm. Nat. Gas v. Powell*, 811 S.W.2d 913, 917 (Tex.1991). A trial court abuses its discretion when it reaches a result so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. *Johnson v. Fourth Ct. of Appeals*, 700 S.W.2d 916, 917 (Tex.1985).

In this case, the record is replete with evidence supporting a denial of Austin's motion to compel. The record establishes that Countrywide produced over 557 pages of documents in response to Austin's discovery requests. Specifically, the primary documents that Austin complained about not receiving were attached to Countrywide's motion for summary judgment. In its discovery responses and on the record to the court, Countrywide said that it had no more documents responsive to Austin's requests and, given the expansive nature of Austin's discovery requests, its objections asserted in response were not unreasonable or abusive. Austin did not specify what information that he believed that Countrywide had that was responsive to his requests and had not been disclosed or how this information was relevant to his claims. Accordingly, there is no error of law that probably caused the rendition of an improper judgment or probably prevented Austin from properly presenting this case to this Court. Tex.R.App. P.

44(a). We overrule issues one and three through seven.

## Austin's Pleadings for Trespass and Conversion

In his second issue on appeal, Austin argues that the trial court erred in not considering his claims for trespass and conversion. In support of this argument, Austin asserts that the trial court stated on the record that it would allow these claims to be made. We disagree.

A review of the transcript cited by Austin in support of this arguments reflects that the trial court did not grant Austin leave to amend his pleadings whenever he chose to do so. To the extent that Austin's point of error can be read as asserting that the trial court erred in denying his motion for leave to file an amended pleading with these claims, we also disagree. The standard for review of a denial of leave to amend is abuse of discretion. *Powell*, 811 S.W.2d at 917. A trial court abuses its discretion when it reaches a result so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law. *Johnson*, 700 S.W.2d at 917.

Once the hearing date for a motion for summary judgment has passed, the movant must secure a written order granting leave in order to file an amended pleading. Tex.R. Civ. P. 166a(c); *see, e.g., Cherry v. McCall*, 138 S.W.3d 35, 42–43 (Tex.App.-San Antonio 2004, pet. denied) (holding trial court did not err in striking plaintiffs amended pleading where plaintiff did not file amended pleading until after summary judgment was already granted); *Hussong v. Schwan's Sales Enters.*, 896 S.W.2d 320, 323 (Tex. App.-Houston [1st Dist.] 1995, no writ) (holding trial court did not abuse its discretion in refusing to consider summary judgment pleading filed one month after hearing and before court

granted summary judgment). Unless the record shows that the trial court granted leave to file the pleading, the appellate court will assume leave was denied. *Leinen v. Buffington's Bayou City Serv.*, 824 S.W.2d 682, 685 (Tex.App.-Houston [14th Dist.] 1992, no writ).

In this case, Austin was on notice of his claims for conversion and trespass at the very latest on December 9, 2005 when he brought this issue before the trial court. On February 27, 2006, Countrywide filed its motion for summary judgment. On April 28, 2006, the trial court heard that motion. Austin did not file his motion for leave to amend his complaint until five days later, on May 3, 2006, more than four months after he had learned of the claims. Given these circumstances, we hold that the trial court's denial of the motion to leave was not an abuse of discretion, and we overrule issue two.

### Austin's Affirmative Claims

Finally, Austin argues that the trial court erred in granting summary judgment on his various claims against Countrywide. Austin argues that his affidavit, the document entitled "Disputed Facts," the documents purporting to be copies of checks made out to Countywide, and the copies he submitted of his correspondence with Countywide create fact issues on all the elements of his claims against Countrywide and defeat Countrywide's no-evidence motion for summary judgment. In issues eight and nine, Austin also argues that he has alleged sufficient facts to show that he is a "consumer" for purposes of bringing a Deceptive Trade Practices Act ("DTPA") claim.

Assuming that Austin has standing to bring a DTPA claim, he has not presented evidence sufficient to defeat Countrywide's no-evidence motion as to all of his claims. As shown above, none of the documents submitted by Austin constitute summary judgment evidence of any unlawful conduct by Countrywide. We therefore overrule all of Austin's issues.

### Conclusion

Accordingly, we affirm the trial court's final judgment.